(92 South. 742)

No. 23748.

## SELLINGTON v. PRODUCERS' OIL CO.

(June 30, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Mines and minerals** ⬥⟲55(7) — **Mineral rights prescribed by nonuser for 10 years.**

The real obligation or servitude created by 'a conveyance of the right to drill for oil or gas is extinguished by prescription liberandi causa, when not used for 10 years, under Civ. Code, arts. 789, 3529, 3546.

2. **Mines and minerals** ⬥⟲55(7)—**Prescription not interrupted as to land retained by acknowledgment in conveyance of other land.**

Conveyances of portions of the land subject to oil and gas conveyances, containing acknowledgments that the mineral rights therein had been sold, did not waive or interrupt the prescription against the mineral rights in the portion of the land retained by the grantor.

Appeal from First Judicial District Court, Parish of Caddo; J. R. Land, Judge.

Action by Mrs. Fannie Sellington against the Producers' Oil Company. From a judgment for defendant, plaintiff appeals. Judgment annulled, and judgment rendered for plaintiff.

Clifton F. Davis and C. B. Prothro, both of Shreveport, for appellant.

Hampden Story, of Shreveport, for appellee.

By Division B, composed of Justices O'NIELL, LAND, and BAKER. (Mr. Justice LAND being recused, Mr. Justice OVERTON was assigned to this section.)

O'NIELL, J. This is an action to relieve plaintiff's land of an alleged servitude or real obligation, in virtue of which defendant claims the oil, gas, and mineral rights in the land. Plaintiff claims that the obligation was extinguished by the prescription liberandi causa, by which servitudes are lost or extinguished, by nonuser for 10 years, according to articles 789, 3529, and 3546 of the Civil Code. Defendant denies that its title to the minerals or mineral rights was subject to the prescription liberandi causa, and in the alternative avers that, if it was so, the prescription was interrupted by acknowledgments made by plaintiff, in two separate sales of parts of the land in which defendant had acquired the mineral rights.

The district judge held that defendant's mineral rights in plaintiff's land were not subject to prescription liberandi causa. The decision was rendered before our final ruling in the case of the Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 South. 207, and is in direct conflict with it. Plaintiff has appealed from the judgment rejecting her demand.

The land on which the mineral rights are contested has an area of about 66 acres, and is described as the S. W. ¼ of N. W. ¼ of section 28, and that part of the N. W. ¼ of S. W. ¼ that is on the north side of Black bayou, in the same section, in township 21 north, range 15 west.

Defendant acquired title from James M. Sellington, on the 3d of November, 1906, by virtue of an act of sale purporting to convey the mineral oil and gas in all of the N. W. ¼ of S. W. ¼ and S. W. ¼ of N. W. ¼, and a half of the oil and gas and mineral rights in the S. W. ¼ of S. W. ¼, of section 28, township 21 north, range 15 west. That description, it will be observed, embraces, not only the land in which the mineral rights are now contested, but also the land immediately south of it, being that part of the N. W. ¼ of S. W. ¼ that is on the

south side of the bayou, and all of the S. W. ¼ of S. W. ¼ of section 28.

James M. Sellington was plaintiff's husband, and the land belonged to the marital community between them. He died, and, by a judgment of court dated the 24th of August, 1911, plaintiff was recognized as the sole owner of the land, having acquired one half as member of the marital community and the other half by inheritance from her deceased husband.

[1] Defendant did not drill or attempt to drill for oil or gas, or exercise or attempt to exercise any right whatever, on plaintiff's land, before this suit was filed. It was filed on the 13th of August, 1917; that is, 10 years 8 months and 10 days after defendant had acquired the mineral rights in the land. It is therefore virtually conceded, or must be conceded, that, according to the doctrine which was finally settled by our decision in the case of Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 South. 207, the real obligation, or servitude, with which plaintiff's land was burdened, was extinguished by the prescription liberandi causa, by which servitudes are extinguished by non-user for 10 years, according to articles 789, 3529, and 3546 of the Civil Code, unless the prescription was interrupted, as defendant contends it was, by a written acknowledgment on plaintiff's part.

[2] The alleged written acknowledgments, relied upon by defendant, have reference to two sales, by which in each instance plaintiff sold a part of the land in which defendant had acquired the mineral rights. On the 22d of August, 1912, plaintiff sold to John Murray and his wife the S. W. ¼ of S. W. ¼ of section 28 in township 21 north, range 15 west, and that part of the N. W. ¼ of S. W. ¼ that is on the south side of the center line of Black bayou, in the same section. Defendant then owned half of the mineral rights in the S. W. ¼ of the S. W. ¼

of the section, and all of the mineral rights in that part of the N. W. ¼ of S. W. ¼ that is on the south side of the bayou, together with the mineral rights in that part of plaintiff's land on the north side of the bayou, being the remaining part of the N. W. ¼ of S. W. ¼ and all of the S. W. ¼ of N. W. ¼ of section 28. It was acknowledged in the deed that John Murray and his wife took the land subject to the previous sale of the minerals or mineral rights to the Producers' Oil Company, defendant herein. The acknowledgment or reservation was stated thus:

"The vendor herein specially reserves and excepts from this sale all of the oil, gas and other minerals in and under said land, with the right of ingress and egress in order to mine and produce the same; the oil, gas and other minerals under said land, with the right to enter upon said land at any time for the purpose of removing the same, having been heretofore sold by J. M. Sellington to the Producers' Oil Company, as shown by act of sale recorded in the recorder's office, Caddo parish, La."

In Baker v. Pena, 20 La. Ann. 52, it was said:

"A party purchasing real estate with a servitude imposed and acknowledged by his vendor, takes the property subject to the servitude, and cannot prevent the use and benefit of the servitude by the party in whose favor it has been established, on the ground that he never consented to it.

"The vendee acquires no greater rights or privileges over property which he purchases than his vendor had.

"Where a servitude is once established on property, it takes 10 consecutive years of non-use by the party in whose favor it is established, to entitle the party on whom it is imposed to prescribe against the right. * * *

"A recognition of the right of servitude by the party owing it will interrupt prescription, which only begins to run again from that date, and must continue for 10 years from the date of the interruption before it is prescribed."

In Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 South. 723, it was held that an acknowledgment made in a deed by which a party bought land subject to a previous sale of the mineral rights,

acknowledging that the seller had sold the mineral rights to a party named in the deed, interrupted the prescription of 10 years, and that the 10 years commenced anew from the date of the acknowledgment. But the theory of that decision, like the ruling in Baker v. Pena, was that the purchaser of the land, who had the right to impose upon it any servitude or real obligation that he might have seen fit to impose upon it, had, by his acknowledgment of the servitude or real obligation in favor of the party in whose favor it had been previously granted, imposed the obligation anew, as a condition of the new title, acquired by the purchaser of the land. Those decisions would be appropriate if John Murray or his wife should, within 10 years from the date of their purchase from plaintiff, contest defendant's right to the mineral oil or gas in the land which they, John Murray and his wife, bought from plaintiff. But the acknowledgment made by plaintiff, in her sale of a part of her land to John Murray and wife, that the minerals or mineral rights in that part of the land had been sold to the Producers' Oil Company, was nothing more than a statement of fact, with regard to the land she was selling to John Murray and wife. It did not purport to be—and was not—a waiver or an interruption of the prescription that was accruing against the mineral rights which the Producers' Oil Company had acquired in the land that plaintiff retained. There was no change or impairment of her title to that part of her land lying on the north side of Black bayou; that is, the land in which the mineral rights are now contested.

The decision in Nabors Oil & Gas Co. v. Louisiana Oil Refining Cor., 151 La. 361, 91 South. 765, is more appropriate to this case than is the ruling that was made in Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 South. 723, or in Baker v. Pena, 20 La. Ann. 52. In the case of the Louisiana Oil Refining Corporation, S. G.

Sample, being the owner of a tract of land in fee simple, sold the mineral rights to a corporation from whom the plaintiff, Nabors Company, afterwards acquired the rights. Within 10 years after his sale of the mineral rights, Sample sold the land to Hill Moseley, with this reservation, viz.:

"Saving and excepting and reserving unto the said vendor, his heirs and assigns, all oil and gas and other valuable minerals that may be under the surface of said land."

In the sale of the land, by Sample to Moseley, there was no reference to the previous sale of the mineral rights. Whatever rights Sample reserved in his sale of the land to Moseley were reserved to Sample himself, and to his heirs and assigns. The Nabors Company did not attempt to exercise or assert the rights acquired from Sample, within 10 years from the date of the company's purchase of the rights, but did assert the rights, in the suit against the Louisiana Oil Refining Corporation, within 10 years after the sale by Sample to Moseley. This court held that the reservation made by Sample in his sale of the land to Moseley did not interrupt the 10-year prescription against the rights which he had previously granted to the author in title of the Nabors Company. It was said:

"The language of the reservation, in favor of the seller of the land, and his heirs and assigns, is too plain to admit of the construction that it was intended to inure to the benefit of plaintiff's author in title, to whom the mineral rights had already been sold. Even though it might have been so intended by S. G. Sample, it was not so acknowledged or recognized by Hill Moseley. In that respect, this case must be distinguished from the case of Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 South. 723; where the purchaser of the land expressly acknowledged that the mineral rights had already been sold to the Louisiana Coal & Lumber Company; and where, for that reason, it was held that the prescription liberandi causa was interrupted, and that the 10 years commenced anew from the date of the interruption.

"Of course, the reservation made by S. G. Sample, in his sale of the land to Hill Moseley, could not have prejudiced the mineral rights which plaintiff's author in title had already acquired from Sample. If those rights had been exercised within 10 years from the date when they were acquired by plaintiff's author in title from S. G. Sample, the reservation which he afterwards made, in his sale of the land to Hill Moseley, would not have availed him. But the reservation made by Sample in his sale to Moseley did not prolong the period of prescription which was running against the rights which Sample had already conveyed to plaintiff's author in title. When those rights were lost by prescription, the reservation which Sample had made in his own favor, and in favor of his heirs and assigns, was yet in effect. That reservation has not been asserted and is not in contest in this case."

The other transaction referred to by defendant, in the contention that the prescription of 10 years was interrupted by an acknowledgment on plaintiff's part, is a sale made by plaintiff to Lee Charlesville, dated the 25th of June, 1917, of 10 acres of land in the W. ½ of W. ½ of section 28, township 21 north, range 15 west. The record does not show the location of the 10 acres, exactly; but, for the purpose of our ruling, we assume that it is a part of the land in which defendant acquired the mineral rights. At the end of the description of the land sold to Lee Charlesville is this statement: "This sale being of the surface rights only." What we have said with regard to the reservation in the sale to John Murray and wife is also applicable to the statement in the sale to Lee Charlesville that the sale was of the surface rights only. The statement does not purport to have been—and cannot be interpreted as—an acknowledgment of an obligation, with regard to mineral rights on land which was not being sold to Lee Charlesville, and which was not referred to in the deed.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the plea of prescription of 10 years, urged by plaintiff, be, and the same is here-by, sustained; and it is therefore ordered, adjudged, and decreed that the mineral rights acquired by defendant, Producers' Oil Company, from James M. Sellington, by the deed dated the 3d of November, 1906, and recorded in Conveyance Book 42, p. 472, in the recorder's office of Caddo parish, La., are prescribed and forfeited, in so far as they affected the S. W. ¼ of N. W. ¼ of section 28, and that part of the N. W. ¼ of S. W. ¼ on the north side of Black bayou, in the same section, in township 21 north, range 15 west. Defendant is to pay the costs of this suit.