# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-31108

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2017

Lyle W. Cayce
Clerk

In the Matter of: HAROLD L. ROSBOTTOM, JR.,

Debtor

HAROLD L. ROSBOTTOM, JR.,

Appellee

v.

GERALD H. SCHIFF,

Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:15-CV-758

Before KING, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

The bankruptcy court granted summary judgment in favor of the bankruptcy trustee, finding Harold Rosbottom's condominium in Dallas was part of his bankruptcy estate. The district court disagreed and reversed the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-31108

grant of summary judgment.   We find ourselves in agreement with the bankruptcy court, and thus we REVERSE the district court.

FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts are undisputed.  During their marriage, Harold L. Rosbottom, Jr. and his then-wife Leslie B. Fox resided with their two children in a home in Shreveport, Louisiana.   At the time, Rosbottom was a businessman, and he and Fox owned the home as community property.

In 1999, Rosbottom and Fox executed four instruments seeking to transfer their respective interests in the Shreveport residence to separate trusts.  One instrument created and governed the Harold Rosbottom Louisiana Trust #1 ("the Rosbottom Trust"), and another created and governed the Leslie Fox Rosbottom Louisiana Trust #1 ("the Fox Trust").   The final two instruments each sought to convey one spouse's interest in the residence to his or her respective trust.  The instruments all bore the same date, were notarized by the same notary, and were witnessed by the same witnesses.  The parties intended the conveyances to occur simultaneously.  Both trusts are Qualified Personal Residence Trusts ("QPRT"), an IRS designation for a trust containing property that is exempt from estate and gift taxes because it is limited to a personal residence.  *See* 26 U.S.C. § 2702; 26 C.F.R. § 25.2702–5.

The instrument creating the Rosbottom Trust named Rosbottom as the settlor and both Rosbottom and Fox as the trustees.  Rosbottom and Fox signed the instrument using those designations.  The instrument creating the Fox Trust named Fox as the settlor and both Rosbottom and Fox as trustees; again, the parties signed in that manner.  Rosbottom sought to donate his undivided one-half interest in the residence to the Rosbottom Trust, and Fox donated her comparable interest to the Fox Trust.

2

No. 16-31108

In 2005, Rosbottom and Fox listed the residence for sale. The buyer's attorney expressed concerns that the spouses' prior donations were null because they violated the community-property principle against a spouse conveying the individual's one-half share to a third party. The attorney conditioned the sale "on Fox and Rosbottom signing the sale deed in their individual capacities." Rosbottom and Fox signed the deed as trustees of their respective trusts and individually as intervenors. The residence sold for $1,850,000. After the sale, Rosbottom and Fox divided the proceeds evenly, "with each half share deposited into bank accounts for the Rosbottom and Fox Trusts, respectively."

Later that year, Fox filed for divorce in Dallas, Texas, where she and Rosbottom had moved. Rosbottom later purchased a condominium at The Vendome in Dallas for $1,900,000. Rosbottom used his portion of the sale proceeds from the residence to finance his purchase of the Vendome condominium. Rosbottom later transferred title to the condominium to the Rosbottom Trust. Fox also used her share of the sale proceeds to purchase a residence in Dallas.[1]

Rosbottom filed for bankruptcy in 2009. The bankruptcy court appointed Gerald Schiff as trustee after it noticed irregularities in Rosbottom's bankruptcy filings. Rosbottom was later convicted of conspiring to commit bankruptcy fraud, illegally transferring and concealing assets, and falsifying an oath. Rosbottom is now incarcerated. After the bankruptcy court confirmed the Chapter 11 reorganization plan, Schiff and Fox sought "a declaratory judgment that [the] condominium in Dallas belonged to the bankruptcy estate,

---

[1] The district court stated that the trustee "apparently treated [Fox's new home] as part of Rosbottom's bankruptcy estate but, because it became a net liability, his only actions with respect to the property were to coordinate with Fox and the property's mortgagees for a short sale that relieved Rosbottom's bankruptcy estate of any liability stemming from the property."

3

rather than a trust, because the transactions purportedly creating the trust violated Louisiana community property law, thereby depriving them of any effect."

Until Schiff and Fox filed their adversary action, the Vendome condominium was not treated as a part of Rosbottom's bankruptcy estate because the Rosbottom Trust ostensibly had title. Schiff and Fox argued, though, that the Vendome property was a part of the Rosbottom-Fox community and not a part of the trust. As the district court stated:

> They asserted that the 1999 donations [of their residence] had no effect because they violated article 2337 of the Louisiana Civil Code, which prohibits a spouse subject to a community property regime from alienating, encumbering, or leasing his undivided interest in any community property. . . . Without any valid receipt of property, the argument continued, the Rosbottom and Fox Trusts were from their inception lacking a *res*, which in turn prevented them from ever existing. . . . Both the [residence] and the proceeds from its sale therefore remained community property.

They further argued that, because Texas is a community-property state, the purchase of the Vendome condominium with the proceeds of the sale of the residence "amounted to nothing more than the reshuffling of community assets and liabilities[.]" The bankruptcy court agreed, holding the Rosbottom Trust never existed and the Vendome condominium was part of Rosbottom's bankruptcy estate.

On appeal, the district court reversed the grant of summary judgment. It concluded that Rosbottom and Fox had effectively made a "single donation" of their former residence, an act which did not violate Article 2337's prohibition against one spouse alienating community property. It found that both Rosbottom and Fox consented to the donations, and their post-donation conduct manifested an intent to convey their entire interest in the Shreveport residence. Thus, the trusts held the proceeds of the sale until Rosbottom

No. 16-31108

purchased the Vendome condominium.  Schiff filed for reconsideration, which the district court denied.  The district court certified this interlocutory appeal under 28 U.S.C. § 1292(b), and a panel of this court granted leave to appeal.

## DISCUSSION

When we review the decision of a district court acting as an appellate court, we "appl[y] the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *Sikes v. Crager (In re Crager)*, 691 F.3d 671, 675 (5th Cir. 2012).  We thus review the bankruptcy court's grant of summary judgment *de novo*.  *See Grothues v. IRS (In re Grothues)*, 226 F.3d 334, 337 (5th Cir. 2000).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also* FED. R. BANKR. P. 7056.  We construe all evidence in the light most favorable to the nonmovant.  *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).

As he argued before the bankruptcy and district courts, Rosbottom now claims that the Vendome condominium was purchased with assets that were held in a trust and were not part of his bankruptcy estate.  Schiff and Fox argue the trusts never existed, so the Vendome condominium was purchased with community assets.  The issues are ones of Louisiana law concerning conveyances of community property.

Under Louisiana law, "[a] spouse may not alienate, encumber, or lease to a third person his undivided interest in the community or in particular things of the community prior to the termination of the regime."  LA. CIV. CODE art. 2337.  This principle is a "rule of public order" that seeks to prevent the improper introduction of third parties into the community-property regime.  *See* LA. CIV. CODE art. 2336 cmt. (b).  It applies even when both spouses consent

to the transaction.  *See* LA. CIV. CODE art. 2337 cmt. (b).  Any transaction alienating one spouse's undivided interest is an absolute nullity, *id.*, meaning it "is deemed never to have existed" and may not be confirmed, LA. CIV. CODE arts. 2030, 2033.  The law governing community property is distinct from and takes priority over the law governing co-ownership.  LA. CIV. CODE art. 2369.1 1990 cmt.

Spouses who wish to divide community property are not without options, though.  "During the existence of the community property regime, the spouses may, without court approval, voluntarily partition the community property in whole or in part."  LA. CIV. CODE art. 2336.  Such a partition is effective against third persons when the conveyance is "filed for registry in the conveyance records of the parish in which the immovable property is located."  LA. CIV. CODE art. 2339.  Property may also be partitioned upon agreement by the spouses or by judicial action.  *Hare v. Hodgins*, 586 So. 2d 118, 122–23 (La. 1991).  Absent judicial action, an agreement to partition community property need not be explicit and may take the form of, for example, a sale, a donation, or a compromise.  *See* ANDREA CARROLL & RICHARD D. MORENO, 16 LA. CIV. L. TREATISE, MATRIMONIAL REGIMES § 7:21 (4th ed. 2016) (collecting cases).  Such agreements usually follow termination of the community.  *Id.*  Community property that is not properly partitioned "remains owned in indivision by the parties."  *See Rollison v. Rollison*, 541 So. 2d 375, 377–78 (La. Ct. App. 1989).

The parties' intent is relevant when determining whether property was correctly partitioned.  *See Fargerson v. Fargerson*, 593 So. 2d 454, 456 (La. Ct. App. 1992).  In *Fargerson*, for example, the parties divided their community property "by an authentic act termed a donation" before their divorce.  *Id.* at 455.  After their divorce, the trial court set aside the property exchange, holding that both parties were at fault and so the donation was revoked by operation of law.  *Id.*  On appeal, the court found that the document, although

styled as a donation, "more accurately reflected a partition of community property." *Id.* at 456. Before divorce, the parties executed the agreement to establish the separate-property regime and thereafter "remained separate in property." *Id.* Considering the circumstances, the parties had clearly evidenced an intent to partition their property. *Id.*

Rosbottom's and Fox's intent to partition is less clear. Unlike the parties in *Fargerson*, Rosbottom and Fox never executed an agreement designed to establish their residence as separate property, nor did they obtain partition by judicial action. Instead, each executed an instrument purporting to donate their undivided interests in the property, which is exactly what Article 2337 prohibits by its plain language. Describing the interests as "undivided" suggests that Rosbottom and Fox intended to continue their community interests in the property despite the involvement of their respective trusts. Further, no evidence suggests that Rosbottom and Fox "remained separate in property" after the execution of the 1999 trust instruments. *See id.* The circumstances presented support that Rosbottom and Fox improperly donated an undivided interest to a third party in violation of Article 2337.

The parties make opposing policy arguments. Schiff argues the district court's ruling "would allow spouses in community to do as they please with respect to community property despite the Louisiana Civil Code's express prohibition against such actions." In his view, there is a critical distinction between co-ownership and community property, the latter being designed to prohibit a spouse from alienating undivided interests in community property prior to termination of the community-property regime. Rosbottom claims the district court's decision simply "endorses a transfer of a community immovable to two third parties." In his view, the opposite outcome would needlessly threaten standard property-ownership rules by making it more difficult for married parties to alienate community property. Rosbottom further notes that

his 1999 transaction was not "illicit, immoral or against public order," which are the only defects that render agreements absolutely null under Louisiana law. *See* LA. CIV. CODE art. 2030.

We have found no Louisiana caselaw to support Rosbottom's interpretation of Article 2337. The plain statutory language prohibits the conveyances Rosbottom and Fox made. Parties are not free to contract in violation of law. *See Leiter Minerals, Inc. v. California Co.*, 132 So. 2d 845, 853 (La. 1961). The bankruptcy court reasoned that when the Shreveport residence

> was transferred, the transfers were wrong because Mr. Rosbottom transferred his undivided interest and Mrs. Rosbottom transferred her undivided interest, each to their own trust, not to a trust they put together for themselves together, but each to his or her separate trust. That can't be done. That cannot be done. You cannot transfer your undivided interest in a community to a third person without the termination of the community.

Because it violated Article 2337, the 1999 transaction is an absolute nullity. *See* LA. CIV. CODE art. 2337 cmt. (b). Title to the Shreveport residence was thus never transferred, making the Vendome condominium part of Rosbottom's bankruptcy estate. *See* LA. CIV. CODE art. 2337 cmt. (b).

REVERSED.