363 So.2d 223 (1978)
Gary AMACKER et al.
v.
Mary Ellen McEniry WEDDING et al.
No. 8557.
Court of Appeal of Louisiana, Fourth Circuit.
September 12, 1978.
Rehearing Denied October 25, 1978.
Writ Refused December 8, 1978.
*224 Sutterfield & Vickery (James R. Sutterfield), New Orleans, for plaintiffs-appellants.
Buchler, Morel & Hanewinckel (Ernest H. Hanewinckel), Metairie, for defendants-appellees.
Before LEMMON, STOULIG and BOUTALL, JJ.
LEMMON, Judge.
This litigation involves a dispute over the amount of monthly rental payments contemplated by a written contract of lease with subsequent written and verbal modifications. *225 The lessors and the lessees have both appealed from a judgment, rendered in one of two consolidated cases, which awarded the lessors the amount of rent found to be due and further ordered the lessees to vacate the premises. However, because this money judgment (which awarded the lessors almost everything they demanded) was rendered in the lessees' suit for a declaratory judgment, rather than in the consolidated suit by the lessors for rental payments, complex procedural problems are presented. We must initially review the factual background to determine what issues are before the court in the appeals from that judgment.

I
The parties originally entered into a written lease, whereby the lessees rented 1,500 square feet of retail store space in a shopping center then under construction for $750.00 per month (being the basic store rental price of $6.00 per square foot per year), plus 750 square feet of mezzanine space for a monthly rental sum of 2% of the actual construction cost of this upper area. For the mezzanine area the lessors agreed to construct "one access stairway, floor, ceiling, one wall, lighting, air conditioning, heating and sprinkling", the plans and specifications for which were to be approved by lessees prior to construction.
While this phase was under construction, the lessees, who intended to operate two businesses on the premises, contracted in writing to rent an additional 750 square feet of mezzanine space for 2% of the actual construction cost, not to exceed $8,500.00. Finally, while construction of the additional mezzanine area was underway, the lessees contracted in writing to rent an additional 1,125 feet of ground floor space at the basic rate (making a total of 2,625 feet of ground floor space at $1,312.50 per month) and agreed verbally to rent an additional 1,125 feet of mezzanine space at 2% of the actual construction cost (making a total of 2,625 feet on the mezzanine level).
A dispute arose as to the mezzanine space when the lessors billed a monthly rental calculated on a construction cost of $41,377.92 for the 2,625 feet. The lessees contended (1) they had never received plans and specifications for approval, (2) the lessors had verbally guaranteed the cost of construction would not exceed $10.00 per square foot, and (3) the construction of that area had only been partially completed, in that only about 750 feet was usable and then only for storage. The lessees accordingly paid only the amount of rent agreed upon for the ground floor space and filed a petition for declaratory judgment, seeking a declaration of their rights under the contract, particularly in respect to the cost limitation of the rental calculation for the upper area and to the rental due for this area during the period construction remained incomplete. The lessors answered, denying such an agreement for construction cost limitation and stating that the general contractor had halted construction of the mezzanine prior to completion at the request of the lessees, who indicated they would complete the work themselves.[1] The lessors then filed a separate suit to recover rent payments due in excess of the amount tendered by the lessees and to seek possession of the premises.
At a scheduled hearing on the rule for eviction the lessees agreed to pay $525.00 per month into the registry of court for the mezzanine space (based on 2% of 2,625 square feet at $10.00), until the matter could be heard in its entirety, and the court referred the eviction issue to the merits.
The two suits were consolidated for trial. The trial court, finding that there was no agreement as to a cost limitation of $10.00 per square foot and that the lessees had occupied the entire 2,625 feet of mezzanine space, rendered judgment awarding the lessors everything they had demanded except liquidated damages. However, this judgment was inadvertently rendered in the declaratory *226 judgment action filed by the lessees, and in the consolidated suit (the lessors' action for overdue rent) the trial court simultaneously rendered a judgment which stated "(t)his cause came on for trial . . . on a petition for declaratory judgment filed herein by the plaintiff" and which dismissed "the plaintiffs' demands" for the reasons assigned in the other suit.
The lessees suspensively appealed from the money judgment, and the lessors appealed devolutively, reurging their demand for liquidated damages.[2] The judgment in the action for declaratory judgment, brought up by these two separate appeals, is now before us for review.
On appeal the lessees argue that the lessors in their pleadings demanded only the dismissal of the action for declaratory judgment and that the judgment must be set aside as granting the lessors affirmative relief in excess of that which was demanded. In effect the lessees contend the lessors appealed from the wrong judgment and are stuck with this procedural error.
This characterization of the procedural posture of this case is incorrect. The more accurate analysis is that the trial court committed the procedural error by filing the money judgment, based on evidence presented in two related and consolidated actions, in the wrong suit. The lessors, possessed of a judgment granting them virtually all of their demands, had no reason to appeal, except from that portion of the judgment implicitly denying liquidated damages. The lessors, with a favorable judgment in one of the consolidated cases and with reasons for judgment made applicable to both cases, cannot reasonably be required to check the docket number and suit title to determine whether the trial court had erroneously filed the favorable judgment in the wrong suit and whether the judgment dismissing "plaintiffs' demand" actually dismissed their demand, rather than that of their opponents. Basic justice and fair play dictate that lessors, misled by the inadvertent error of the trial court under the pressure of handling a busy docket, should not be restricted to the relief demanded in the pleadings in this particular suit, but rather should have this appeal decided on the merits of the consolidated cases and not on a procedural error primarily caused by the court's confusion of docket numbers and suit titles.
Accordingly, the judgment will be reviewed in the manner in which it was intended to be rendereda declaration of the lessees' rights and a contemporaneous granting of relief to the lessors in accordance with the declaration.[3]

II
As to the merits of the appeal, the trial court properly found the parties had not agreed on a cost limitation of $10.00 per square foot on mezzanine construction. This resolution of conflicting testimony is supported not only by the denial of the lessors and their leasing agent (who allegedly made the statement as to the limitation), but also by the fact that the written lease for the first mezzanine addition contained an express limitation which amounted to over $11.30 per square foot. Furthermore, the lessors' contractor's admitted representation to the leasing agent prior to any construction that $10.00 was a reasonable "budget figure" can only be taken in the context of basic mezzanine construction, without extras or change orders. In this case the several additions and the changes directed by the lessees during the course of construction obviously had an effect upon the ultimate cost per square foot.
*227 The lessees also questioned the lessors' contractor's calculation of the cost of mezzanine construction, particularly the basic cost of $16,076.71 for the third phase (1,125 feet) and the $5,592.00 cost of interior partitions.[4]
As to the charges of the general contractor, the lessors calculated the amount allocable to the mezzanine area by reconstructing the contractor's time sheets and material invoices in accordance with the superintendent's daily log or diary. The time sheets showed the hours worked and the type of labor performed, while the diary showed the daily progress on each store and area of that store. Although the superintendent admitted he did not keep an accurate record itemized by hours for each employee in a particular area of the shopping center, he stated his determination was "pretty close to the accurate number of hours" for the employee on the particular phase of the job at a particular store. Furthermore, the greater cost per square foot of this phase was reasonably attributable to the on-the-job extras and changes (such as moving walls, building false fireplaces, and having a wide second floor expanse without supporting walls or columns on the ground floor) directed by one of the lessees. Additionally, this lessee, who was to operate a business on the mezzanine floor, terminated his relationship with the other principal individual lessee around the time of completion of construction, and the managing lessor testified that the remaining principal lessee's initial objection was that he had no use for the expanded mezzanine area because of this termination of the business relationship. Indeed, this lessee conceded he may have tried to get out of the mezzanine lease when the other principal lessee terminated their relationship.
As to the charges of the subcontractors, the lessors allocated the costs of air conditioning, electrical work and sprinkler system by dividing the total cost of the third phase by two, since the square footage of the mezzanine floor in that phase was exactly the same as the square footage of the ground floor. The record supports a conclusion that this allocation is reasonable, especially since the mezzanine construction was more expensive in some areas, such as special lighting fixtures, more extensive air conditioning ductwork, and greater air conditioning capacity due to a greater heat factor.
An additional consideration is the fact that the third phase required removal and reconstruction of some work done in earlier phases. Moreover, the managing lessor testified that they were rushed for completion and would have preferred to secure cost estimates on fixed plans as they did for other tenants.[5]
There is no manifest error in the trial judge's determination that the monthly rental for the mezzanine space was $827.56, calculated on a total construction cost of $41,377.92.

III
The lessees correctly point out a miscalculation in the judgment, in that the additional monthly rental should have been calculated from February, 1974 rather than 1973.

IV
The lessors' appeal raises the issue of a contractual stipulation for liquidated damages in the amount of $15,000.00 in the event of a breach. The written lease provided:
"Failure of Lessee to pay any installment of the guaranteed rental or additional rental, or failure of Lessee to comply with any other obligation of this lease. . . shall give Lessor the right, at *228 Lessor's option, (a) to cancel this lease, in which event there shall be due, from Lessee to Lessor, as liquidated damages, a sum equal to the amount of the guaranteed rent for one year; or (b) to sue for the rent as the same accrues."
Ordinarily, legal agreements have the effect of law between the parties and will be enforced by the courts. While damages due for the breach of a contract (other than for the payment of money) are the amount of the loss the creditor has sustained or the profit of which he has been deprived, the parties by their contract may determine the sum that shall be paid as damages for its breach. C.C. art. 1934(1) and (5).
In the present case the lessors will sustain damages from the loss of revenue when the lessees are evicted, and the parties freely contracted to estimate these damages in relation to the costs expended and amount of monthly rental lost during a reasonable period for obtaining another tenant.[6] Since the agreed damages are not disproportionate to the probable loss, there is no basis for denying recovery, once the court determined that a breach did in fact occur.
Accordingly, the judgment of the trial court is amended to reduce the amount of the award for rental payments for the mezzanine area through July 2, 1976 by $9,930.72 ($827.56 per month for 12 months) and to award liquidated damages in the amount of the guaranteed rent for one year. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.
STOULIG, Judge, concurring in refusal to grant rehearing.
I concur in the refusal to grant the rehearing. I still concur in the result awarding liquidated damages. However, I am of the opinion that under Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970), no inquiry should have been made as to the reasonableness or the motive for the liquidated damage provision in the contract. Further LSA-C.C. art. 21 (equity article) cannot be applied where there is a clear and unambiguous liquidated damage provision in the agreement.
NOTES
[1] Under their agreement the lessees could either complete the construction at their cost or have the lessors' contractor complete the construction at the lessors' cost and pay 2% of that cost as monthly rental.
[2] The lessors also appealed in the action for overdue rent, apparently after they realized the judgment had been rendered in the wrong suits. That appeal was filed after the delay for appealing had elapsed and was dismissed as untimely.
[3] A declaratory judgment generally only declares rights and does not grant relief. This judgment can be viewed as properly granting relief because of the demands and the evidence in the consolidated case. The correctness of both the declaration of rights and the extent of relief is thus raised by the lessees' appeal.
[4] The basic mezzanine cost of the first phase (750 feet) was $8,590.62 and of the second phase (750 feet) was $6,592.97.
[5] The basic rental price of ground floor space was fixed because of a firm construction contract for this area. The rental price for mezzanine space could not be fixed at the time of execution of the contract, and this construction was done on a "cost plus" basis, with its inherent problems of overruns created by extras and change orders directed during the course of construction.
[6] Arguably, if the parties could not reasonably have expected a breach to cause damages fairly proportionate to the agreed damages, the lessees could have contended the contractual provision was an illegal attempt to collect future rentals beyond the termination of the lease, as was the issue in Executive Car Leasing of N. O., Inc. v. Alodex Corp., 279 So.2d 169 (La. 1973). However, the use of the amount of monthly rentals over a reasonable period to estimate reasonably anticipated damages is not such an attempt.