GUIDRY, Judge.
In this suit Livingston Roofing Company, Inc. seeks judgment against the defendants, in solido, for the sum of $22,820.44, and recognition of plaintiff’s alleged lien and privilege upon certain property described in its petition as belonging to The Diocese of Alexandria-Shreveport.
The facts of the instant matter are without dispute. Sometime in the year 1978 the bell tower of St. Anthony’s Catholic Church in Bunkie, Louisiana, and the steeple cross were damaged by a wind storm. Shortly thereafter the pastor of St. Anthony’s presumably contacted E. E. Rabalais & Son, Inc., a general contractor doing business in Bunkie, Louisiana, who in turn contacted plaintiff. As the result of an “on-the-job” conference attended by the pastor of St. Anthony’s, Father Pat Murphy, Michael D. Rabalais, representing E. E. Rabalais & Son, Inc., and Shaftner Chenevert, President of Livingston Roofing Company, Inc., which was held sometime prior to December 27, 1978, plaintiff agreed to do certain repair work to the Church’s bell tower, steeple cross and roof. The essential particulars of the agreement entered into by the parties at the “on-the-job” conference is set forth in a letter dated December 27, 1978, written by E. E. Rabalais & Son, Inc., (hereafter, Rabalais) and addressed to Livingston Roofing Company, Inc., (hereafter, Livin-ston). The letter agreement, introduced in evidence as plaintiff’s exhibit 1, reads in pertinent part as follows:[1]

“In follow up to our on-the-job conference, we hereby request that you proceed as necessary to remove the steeple cross; repair as required; and re-install to it’s (sic) position prior to the storm damage. Please send us certificates of insurance coverages for general liability and work-mens (sic) compensation before any work is done.

While your crews are repairing the cross, we ask that they check out and repair the leaks around the bell tower base where the pitched roof intersects the tower and any other potential problems which may be apparent upon inspection. Please keep the cost of repairs on this work separate from that of the repairs to the cross, as the insurance company is to 
*1049
pay for the cross repairs (as evidenced by copy of letter from the Adjuster) and St. Anthony’s Church will pay for repairs of leaks etc.

It is understood that due to the nature of this work, you are unable to give us a firm quotation, so we authorize you to proceed on a labor and materials basis plus a reasonable percentage for overhead and profit. We request your assurance that only the best workmanship and materials be employed in this project and that you will stand behind your repairs for the usual guarantee period.”

Shortly following receipt of the above letter Livingston forwarded a certificate of insurance coverage to Rabalais and commenced the repair work which was completed sometime in the latter part of February, 1979. Upon completion of the work Raba-lais and the Church refused to make payment to Livingston for the work performed because allegedly the amount charged by Livingston was excessive. This suit followed.
According to invoices introduced in evidence as plaintiff’s exhibits 3 and 4, Livingston’s charges for the work performed are itemized as follows:
Total Materials . 1443.21
Total Labor . 9992.33
Travel Time & Truck Expense . 1219.40
Equipment rental. 1222.65
Sub-Total . $13877.59
Labor Insurance, Taxes etc. 2697.93
Overhead (35% x $13,877.59) .... 4857.16
Profit (10% of $13,877.59). 1387.76
Grand Total . $22820.44
At the conclusion of the trial the lower court dismissed plaintiff’s suit against Ra-balais, concluding that the work was not performed for Rabalais as general contractor and the Diocese as owner, but rather for the Diocese, with Rabalais acting as the latter’s agent. Further, the court below rendered judgment in favor of Livingston and against the Diocese of Alexandria-Shreveport in the sum of $17,963.28, concluding that:
“As to the materials and labor charged, Livingston Roofing Co., Inc. has proved its case by a preponderance of the evidence adduced. With the exception of the 35% markup for overhead, this court will give judgment to plaintiff for quantum as prayed.”[2]
Livingston has appealed seeking an increase in the amount awarded by the trial court and reversal of the judgment insofar as it dismisses its suit against Rabalais. The Diocese of Alexandria-Shreveport appealed however, its appeal was subsequently dismissed by this court upon failure of the Diocese to file a brief within the delay required by the rules of this court.[3]
The issues on appeal are: (1) did the trial court err in failing to award Livingston a reasonable sum to compensate for “overhead”; and, (2) did the trial court err in dismissing plaintiff’s suit against Rabalais. We answer both queries affirmatively.
The parties agreed at the December 1978 “on-the-job” conference, as confirmed by the letter written by Rabalais, that Livingston would proceed with the repairs on a labor and materials basis “plus a reasonable percentage for overhead and profit ”. The trial judge, although finding the billing for materials and labor to be accurate, allowed plaintiff 10% for profit but completely disallowed any percentage for overhead. This was error.
It is well settled that parties are bound by their agreements so long as such agreements are not contra bonos mores or violative of some prohibitory law. Maloney *1050 v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970); Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So.2d 845 (1961); Amacker v. Wedding, 363 So.2d 223 (La. App. 4th Cir. 1978), writ refused. The provision in the contract fixing the amount due plaintiff for the work performed as labor and materials plus a reasonable percentage for overhead and profit is not contra bonos mores or violative of a prohibitory law and thus has the force of law between the parties. Presumably, the trial court found that plaintiff’s allocation of 35% for overhead was not reasonable. Be this as it may it was error for the trial court to completely disallow plaintiff a reasonable percentage for overhead.
Although Mr. Chenevert testified that Livingston generally charged 35% for overhead in all of its cost-plus contracts, all other experts who testified at the trial of the instant matter were generally in agreement that 10% for profit and 15% for overhead were customary in the industry. We accept the latter percentages as “reasonable” and accordingly, we will amend the trial court judgment so as to allow plaintiff the additional sum of $2081.64 (15% X $13877.59). See Swan v. Bern Mas Enterprises, Inc., 299 So.2d 845 (La.App. 4th Cir. 1974).
We next consider the second issue presented in this appeal. The trial judge dismissed plaintiff’s suit against Rabalais concluding that Rabalais was acting solely as the agent for the Diocese in all negotiations with Livingston. As aforestated we find this conclusion to be manifestly in error.
It is well settled that an agent is responsible to those with whom he contracts when he does not disclose that he is acting as an agent. LSA-C.C. Article 3013. Guillory v. Courville, 158 So.2d 475 (La.App. 3rd Cir. 1963); Bush v. Saucier, 197 So.2d 907 (La.App. 1st Cir. 1967).
There is nothing in the record to establish that Rabalais’ agency was ever disclosed to Livingston. Michael Rabalais, who represented Rabalais in all negotiations, did not testify that he ever informed Livingston that he was acting as agent for the Diocese. Father Murphy did not testify that Livingston was ever informed that Ra-balais was acting as agent for the Diocese. Following the “on-the-job” conference the letter agreement was written by Rabalais as general contractor to Livingston and contains no language whatever even implying the existence of an agency relationship between Rabalais and the Diocese. Following receipt of the latter the certificate of insurance was issued by Livingston to Ra-balais, as contractor for the Diocese. In sum there is nothing in the record which would even suggest that Livingston was informed that an agency relationship rather than a contractor-owner relationship existed between Rabalais and the Diocese until after the instant suit was filed. Under such circumstances it is clear that Rabalais cannot avail itself of the special defense of agency and that plaintiff is entitled to judgment in solido against both the Diocese of Alexandria-Shreveport and E. E. Raba-lais & Son, Inc.
For the reasons assigned the judgment of the trial court is amended in part and reversed in part and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, LIVINGSTON ROOFING COMPANY, INC., and against defendants, E. E. RABALAIS & SON, INC., and THE DIOCESE OF ALEXANDRIA-SHREVEPORT, in solido, in the full sum of TWENTY THOUSAND FORTY-FOUR AND 92/100 ($20,044.92) DOLLARS, together with legal interest on such sum from date of judicial demand until paid.
Expert witness fees are fixed by the court at $150.00 each per courtroom appearance. All costs are assessed against the defendants.”
Costs of this appeal are assessed in equal proportions to The Diocese of Alexandria-Shreveport and E. E. Rabalais & Son, Inc.
AMENDED IN PART, REVERSED IN PART AND RENDERED.

. The agreement was not recorded and the owner did not require a bond pursuant to LSA-R.S. 9:4802.

. The judgment of the trial court does not recognize the existence of a lien and privilege by Livingston on the property of the Diocese of Alexandria-Shreveport described in plaintiffs petition. Presumably, Livingston abandoned this portion of its demand against the defendants as the recorded lien affidavit was not offered in evidence at the time of trial nor does Livingston seek recognition of such lien and privilege on appeal.

. According to Livingston’s appellate brief the Diocese fully paid and satisfied all sums due under the judgment rendered by the trial court on December 8, 1980.