Dear Mr. Sundbery:
On behalf of the Terrebonne Association of Retarded Citizens, Inc. (TARC), you have requested an opinion of this office concerning the disposal of certain movable and immovable property that TARC no longer needs in connection with its operations.
You advise that TARC was incorporated in 1962 as a non-profit corporation to provide for the educational and other needs of the mentally retarded in Terrebonne Parish. On July 30, 1992, TARC and the Terrebonne Parish Consolidated Government (TPCG) entered into a written agreement/contract concerning the funding of TARC's operations by TPCG. Under this agreement/contract, TARC agreed to amend its Articles of Incorporation and By-laws to provide that TPCG would be the appointing authority for TARC's Board of Directors, which directors may be removed by TPCG at any time upon a showing of good cause. The agreement/contract also recites that TARC would be considered a component unit of TPCG; and to the extent permitted by law, TPCG agreed to allow TARC access to all TPCG services, contracts and benefits.
This agreement/contract also requires TARC to submit its budget to the Terrebonne Parish Council on an annual basis for approval. TARC also agreed to submit quarterly reports concerning its operations and expenditures to the Terrebonne Parish Council, and agreed to submit to any audit by auditors selected by TPCG. The agreement/contract further requires TARC to comply with the Public Bid Law, the State Ethics Code, the Public Records Law, the Sunshine Law, and "any other similar law applying to public bodies" in consideration of the funds provided by TPCG to TARC.
You advise that for the fiscal year ending June 30, 2002, TARC received contributions approximating one-third of its total annual revenues from TPCG, and federal/state funds totaling approximately forty-five percent of its total annual revenues. The TPCG funds come primarily from a 5.08 mill parish wide ad valorem tax for the purpose of operating, maintaining and constructing schools for the mentally retarded. The federal and state funding is received on a per diem, per client/unit basis, and on a reimbursement for actual expenditures basis.
You also point out that Opinion No. 93-218 rendered by this office concluded that TARC must comply with the publication requirements of La.R.S. 43:171 because TARC was a "political subdivision" within the meaning of La.R.S. 43:171; and that TARC was also contractually obligated under its agreement/contract with TPCG to follow the publication provisions of La.R.S. 43:171.
You ask whether or not TARC must comply with the statutes pertaining to the disposal of surplus property by governmental entities; and, if so, what statutory procedures can TARC rely upon in disposing of such property. Finally, you ask whether TARC is bound by the provisions of Louisiana Constitution Article VII, § 14, and similar laws prohibiting the donation of public property.
We are of the opinion that, under the terms and conditions of the present agreement/contract between TARC and TPCG, TARC is required to comply with the statutes pertaining to the disposal of surplus property by public entities. While TARC may be considered a component unit of TPCG under its agreement/contract with TPCG, it is the opinion of this office that TARC should follow the procedures set forth in La.R.S. 33:4712
pertaining to the sale of property by municipalities. This office has previously determined that police juries authorized by La.R.S. 33:4711 to sell surplus property can do so in accordance with the procedures applicable to municipalities set forth in La.R.S. 33:4712. Op. Atty. Gen. January 15, 1973. Instead of adopting an ordinance as called for in La.R.S. 33:4712, we are of the opinion that TARC may simply adopt a resolution for the sale of any surplus land and/or improvements. See: Op. Atty. Gen. 92-606.
This office is also of the opinion that any sale of surplus moveable property by TARC can be accomplished by following either the provisions of La.R.S. 49:125 or, if the appraised value of the moveable property is five thousand dollars or less, TARC may follow the provisions of La.R.S.33:4712(F).
Finally, this office is of the opinion that TARC, as a recipient of public funds for the educational and other needs of the mentally retarded, is bound by the provisions of Louisiana Constitution ArticleVII, Section 14, prohibiting the donation of public property.
We hope that this opinion adequately answers the questions raised in your request; and if we can be of any further assistance to you in this matter, please do not hesitate to contact our office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ ROBERT H. CARPENTER, JR. ASSISTANT ATTORNEY GENERAL
RPI/RHC/tp
DATE REQUESTED: January 8, 2003
DATE RELEASED: May 30, 2003
REQUESTED BY: Mr. Sydney Sundbery, Esq.
 P.O. Box 3017 Houma, LA 70361
AUTHOR: ROBERT H. CARPENTER, JR.
 Assistant Attorney General Civil Division Lands Natural Resources Section
OPINION NUMBER 93-218
RELEASED AUGUST 23, 1993
90-C — PUBLIC RECORDS 90-B-4 — PUBLIC MEETINGS — State local governing bodies R.S. 43:171 et seq, R.S. 13:5101, R.S. 13:5102(B), CONST 6.44
The Terrebonne Association for Retarded Citizens is a "political subdivision" within the ambit of LSA-R.S. 43:171 and must publish in a newspaper the minutes of its proceedings and financial statements required by the legislative auditor.
Mr. Sidney C. Sundbery Duval, Funderburk, Sundbery Lovell 101 Wilson Avenue Post Office Box 3017 Houma, Louisiana 70361
Dear Mr. Sundbery,
You have requested the opinion of this office as to whether the Terrebonne Association for Retarded Citizens, Inc. (TARC), is a "political subdivision" of the state or parish within the meaning of LSA-R.S. 43:171 such that TARC must comply with the provisions of that statute for the publication of the minutes of its proceedings. You also ask whether, if TARC is not a "political subdivision" for this purpose, it must otherwise comply with the provisions of LSA-R.S. 43:171 under its contract with the Terrebonne Parish Consolidated Government (TPCG), which in part requires that TARC comply with "the Public Bid Law set forth in La.R.S. Title 38, the State Ethics Code, the Public Records Law, the Sunshine Law, and any other similar law applying to public bodies."
It is the opinion of this office that the Terrebonne Association for Retarded Citizens, Inc., must publish the minutes of its proceedings pursuant to LSA-R.S. 43:171, which provides that:
 Levee, drainage, subdrainage, road, subroad, navigation, and sewerage districts, or other political subdivisions of the state and parishes, shall have the proceedings of their board and such financial statements required by and furnished to the legislative auditor published in a newspaper.
Since "political subdivision" is not specifically defined for the purposes of LSA-R.S. 43:171, it is necessary to look elsewhere to determine whether TARC should be considered a "political subdivision" subject to the publication requirement of this statute.
"Political subdivision" is defined fairly broadly in various places throughout the statutory law for different purposes. Section 44 of Article VI (Local Government) of the Louisiana Constitution of 1974 defines "political subdivision" as "a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions." The key to this definition is the legal authority of a body to perform governmental functions.
Likewise, LSA-R.S. 13:5101 et seq. (Suits Against State, State Agencies, or Political Subdivisions) defines "political subdivision" in terms of legal authority to perform governmental functions, while not being restricted to political units contained within clearly defined boundaries. Section 5102(B) defines "political subdivision" as "any parish, municipality, special district, school board, sheriff, public board, institution, department, commission, district corporation, agency, authority, or an agency or subdivision of any of these, and other public or governmental body of any kind which is not a state agency."
Given the apparent purpose of LSA-R.S. 43:171, to provide the public with ready access to the proceedings of public bodies, it would be helpful to examine certain provisions of a companion law, the Louisiana Open Meetings Law, or "Sunshine Law", (LSA-R.S. 42:4.1 et seq.) to determine what bodies are considered of a "public" nature such that the public should be allowed access to their proceedings.
In Seghers v. Community Advancement, Inc., 357 So.2d 626 (La.App. 1st. Cir. 1978), the court held that Community Advancement, Inc., a private non-profit corporation, was subject to the provisions of the "Sunshine Law" as a "public body" within the intendment of the statute. The court reasoned that:
 The corporation was organized to perform and has performed a governmental function, the administration of the antipoverty program. It has been supported almost exclusively by tax derived funds. It has been able to and has set policy in the distribution of those funds. . . . The fact that Community Advancement, Inc. was organized under the legal mechanics of the private non-profit corporation law of the state should not result in its immunity from the statute.
TARC was incorporated on March 21, 1962 by private citizens as a non-profit corporation. It was formed to provide for the needs of the mentally retarded in Terrebonne Parish, including their education at TARC facilities. TPCG, and its predecessor, the Terrebonne Parish Police Jury, have contributed substantial funds to TARC, primarily from a 5.08 mill parishwide ad valorem tax. Keeping in mind the purpose behind such laws as the Open Meetings Law, the Public Records Act, it is reasonable to require TARC, as a "political body" under the cited jurisprudence, and thus falling within the generally accepted definition of "political subdivision", to comply with the publication requirements of LSA-R.S.43:171.
Furthermore, it is our opinion that under the express terms of the contract between TPCG and TARC, the Association for Retarded Citizens is obligated to publish the minutes of its board meetings pursuant to LSA-R.S. 43:171. It is a well settled general principle that legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. Cooper v. Olinde, 565 So.2d 978 (La.App. 1 Cir. 1990); Quinn-L Corporation v. Elkins, 519 So.2d 1164 (La.App. 1 Cir. 1987). The parties are bound by their agreements so long as such agreements are not contra bonos mores or violative of some prohibitory law. Livingston Roofing Co. v. E. E. Rabalais Son, 401 So.2d 1047
(La.App. 3d Cir. 1981).
In this case, the provision of the contract requiring that TARC follow the publication provisions of LSA-R.S. 43:171, even if TARC does not fall within the intendment of the term "political subdivisions" in that statute, is neither contra bonos mores nor violative of a prohibitory law. Therefore, the Terrebonne Association for Retarded Citizens is contractually obligated to have the proceedings of its board and those financial statements required to be furnished to the legislative auditor published in a newspaper selected according to the provisions of LSA-R.S. 43:171(A)(2).
I hope that this adequately answers your request. If this office may be of further assistance in the future, please do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: GLENN R. DUCOTE Assistant Attorney General
RPI/GRD/bb 7601