Dear Deputy Dill:
On behalf of the Lafourche Parish Sheriff's Office, you have requested an opinion of this office regarding whether the Sheriff's Office can dispose of surplus property through an internet-based auction site; specifically a website operated by GovDeals, Inc. GovDeals, Inc. is a privately owned web-based service that exclusively auctions surplus property of governmental entities. Property listed for auction is available for bid by any person through the web site of GovDeals, Inc., and is subject to a 7.5% service fee paid by the seller with the seller having the right to remove any item at any time prior to final sale.
Specifically, you ask if use of the internet-based auction site would be permitted by LSA-R.S. 49:125 and thus be considered a public auction and whether this provision would allow a public entity to pay a 7.5% service fee of the final sale price of each item sold through the internet auction. You also ask about how such an internet auction sale would be advertised as required by R.S. 49:125, and finally, you ask if it would be permissible for a political subdivision to auction surplus property through a web-based internet service which allows both public and private property auctions.
Our office has previously stated that municipalities and political subdivisions should follow the procedures outlined in LSA-R.S. 33:4712(F) or LSA-R.S. 49:125 to dispose of surplus movable property. Op. Atty. Gen. Nos. 00-461, 98-352.
La. R.S. 33:4712 (F) authorizes a municipality to sell movable property, which has an appraised value of $5,000 or less, at private sale provided there is a resolution passed which gives the reasons for the action and setting therein the minimum price and terms of the sale. In addition, notice of the resolution and proposed sale must be published at least 15 days prior to the date of the sale and the sale must be made to the highest bidder. Prior opinions of our office have stated that political subdivisions such as the *Page 2 
Sheriffs Office are authorized to use the sale procedures set forth in R.S. 33:4712. See Ag. Op. Nos. 92-606 and 03-0056.
La. R.S. 49:125 allows for the sale of surplus movable property at public auction by any political subdivision of the state. The statute authorizes the public entity to employ a qualified licensed auctioneer to handle the sale. The sale must be advertised and no sale shall be at a price less than is required by law with the public entity reserving the right to reject any and all bids and remove the item from the sale.
The Sheriff's Office may also sell surplus movable property to another public entity through an intergovernmental agreement as provided by R.S. 1321 et seq., the "Local Services Law". These statutes provide for the purchase of surplus materials, supplies and equipment by one public entity from another without the other public entity going through the public auction or public bid process. However, the transfer must be for a price commensurate to the value of the surplus property.
There does not appear to be any clear statutory authority for the Sheriff to sell surplus movable property through an internet-based auction site. Furthermore, the internet auction process described in your opinion request would be inconsistent with the current surplus property sale statutes. R.S. 33:4712(F) relates only to property having a value of $5000 or less and requires a 15-day advertisement period. The internet auction described in your opinion request does not have a threshold limit and does not meet the statutory advertising requirements. R.S.49:125 also requires pre-sale advertising and reserves to the public entity the right to reject any and all bids. The internet auction does not allow for such advertisement and does not allow for the rejection of any and all bids. The current statutes also fail to provide definitions, guidelines and procedures on how a political subdivision would go about conducting an internet-based auction.
Similar issues arose when the state evaluated its surplus property sale statutes to determine if the statutes could allow for the sale of surplus movable property through internet-based auction sites. Existing laws regulating the sale of state surplus movable property did not provide clear authority for such sales, and the existing statutes were inconsistent with the internet auction sale procedure. However, Act 19 of the 2004 Regular Session of the Louisiana Legislature amended the surplus sale procedure in R.S. 39:330.1(A), and enacted internet auction definitions in R.S. 39:321 (2)(5)(6) and (7) to authorize the state, or any board, commission, agency or department of the state to sell surplus movable property through an internet-based auction cite. Prior to this legislation, surplus movable property could only be disposed of through the Division of Administration pursuant to R.S. 39:330.1, or, with written consent of the Commissioner of Administration, through a sale under the provisions of R.S. 49:125 which allowed for the sale of surplus movable property at public auction after appropriate advertisement. See Atty. Gen. Op. Nos. 03-0403, 95-262 and 91-1. *Page 3 
Therefore, it is the opinion of our office that, absent specific legislation, the Lafourche Parish Sheriff's Office is not authorized to sell its surplus movable property through an internet-based auction site but, instead, must follow one of the procedures outlined in R.S. 49:125 or R.S. 33:4712(F) for the disposal of surplus movable property or the Sheriff may dispose of surplus movable property pursuant to an intergovernmental cooperative agreement as provided by La. R.S. 33:1321 et seq.
If you have any questions or comments, please do not hesitate to contact our office.
With kindest regards,
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: ______________________ RICHARD L. McGIMSEY Assistant Attorney General
 CCF, JR/RLM/jv *Page 4 
 ATTACHMENT OPINION NUMBER 91-1
110 — STATE — Surplus Property
 R.S. 39:330.1: R.S. 49:125; R.S. 38:2212 D: R.S. 33:1324.
 Port commission must use public auction for sale of surplus moveable property unless property is sold to another public entity.
 Attorney James C. Crigler, Jr. McGlinchey, Stafford and Lang 405 Morgan Street Lake Providence, Louisiana 71254
Dear Mr. Crigler:
You have requested an opinion of this office on behalf of the Lake Providence Port Commission regarding the following:
 Are there methods other than those set forth in R.S. 39:330.1 and 49:125 through which the Lake Providence Port Commission may sell a crane that is no longer needed?
The Lake Providence Port Commission is a navigation district, created by the Legislature. R.S. 34:401. It has been empowered as a political corporation of the state. R.S. 34:402. It therefore falls into the category of a state "commission," included in the R.S. 39:321(A) definition. As a state agency, the Commission is permitted to dispose of its surplus movable property by public auction in accordance with R.S. 49:125 and 39:330.1.
Should the Port Commission choose to sell the surplus property to another public entity, it may do so without using the auction or public bid process under the provision of R.S. 38:2212 L or R.S. 33:1324. *Page 5 
This reasoning is consistent with Attorney General's Opinion No. 79-1222 (October 24, 1979) which states that surplus movable property of the state, or of any board, commission, agency or department of the state can only be sold to private parties through the Division of Administration on its or their behalf, and then only at public auction after appropriate advertisement or by compliance with R.S. 39:330.1 and 49:125.
I trust that this answers your inquiry. If you have additional questions, please contact me.
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: ___________________ GLENN R. DUCOTE Assistant Attorney General
 GRD:2731 *Page 6 
 ATTACHMENT OPINION NUMBER 92-606
OPINION NUMBER 92-606
73-A — NOTICE REQUIREMENTS 93 — SALES 172-A — WATER DISTRICTS
R.S. 33:3811, R.S. 33:4711-4712
Waterworks Districts should adhere as closely as possible to sale provisions applicable to police juries in sales of immovable property. Waterworks District may follow the procedures outlined in R.S. 33:4712.
Mr. Gregory R. Aymond Attorney at Law Rapides Parish Water District 810 Main Street P.O. Box 3418 Pineville, Louisiana 71361
Dear Mr. Aymond:
You have requested the opinion of this office to determine whether the Rapides Parish Waterworks District No. 3 may sell immovable property pursuant to the procedure set forth in R.S.33:4712 by adopting a resolution instead of an ordinance. You have advised that the Waterworks District does not have the authority to adopt ordinances, but it does have the authority to adopt resolutions.
A parish waterworks district is a corporate political subdivision of the State created under the authority of the Legislature, which has expressly authorized the various parishes of the State (through their respective police juries, as the governing authority of the parish) to create Water Districts. La. R.S. 33:3811.
Although there are statutory provisions governing the sale of immovable property by municipalities and parishes, this office is unaware of any specific provisions regarding sales by special service districts such as the Waterworks District. However, the Louisiana courts have held that corporate political subdivisions of the state have the authority and a duty to sell excess real property, and that it is not necessary for the legislature to say so in a special enactment. Alexis v. Kare-Sue, Inc., 187 So.2d. 476 (La.App. 4th Cir. 1966). The Alexis court reasoned that Water District No. 1 of St. Bernard Parish was properly created under the authority of the Legislature and was thereby vested with broad powers and authority to sell its idle land with "full and complete legal authority and capacity."
In our opinion, it would be prudent for the Waterworks District, created by the police jury, to adhere as closely as possible to the sale provisions applicable to parishes. This *Page 7 
office has previously determined that police juries authorized by R.S. 33:4711 to sell surplus property can do so in accordance with the procedures applicable to municipalities as set forth in R.S. 33:4712. Op.Atty.Gen. Jan. 15, 1973.
La. R.S. 33:4712 provides, in pertinent part, as follows:
 Section 4712. Sale, exchange, or lease of property by a municipality
 A. A municipality may sell, lease for a term of up to ninety-nine years, exchange, or otherwise dispose of, to or with other political corporations of this state, or private persons, at public or private sale, any property, or portions thereof, including real property, which is, in the opinion of the governing authority, not needed for public purposes.
 B. Before disposition can be made of property under the provisions of this Sub-part, an ordinance must be introduced, giving the reasons for the action on the part of the governing authority, and fixing the minimum price and terms of the sale, lease, exchange or other contract to be made with reference to the property. (Emphasis added.)
Generally, the word "ordinance" is understood to mean a "legislative act", but this is not necessarily so in all cases. "`[O]rdinance' is often used as a general term which encompasses all of the acts of municipal board or council whether administrative or legislative in nature". Chapman v. Bordelon,138 So.2d 2 (La. 1962). See also: Melancon v. State Board ofEducation, 188 So.2d 419 (La. 1966).
The underlying purpose for requiring an ordinance under R.S.33:4712 is to notify citizens of the action to be taken and to afford them the opportunity to oppose the adoption of such ordinance for whatever reasons. Notice to sell land is required because property devoted to public use by its very nature is held and owned by a political subdivision in trust for the use and benefit of its citizens. In our opinion, the Waterworks District can accomplish the notification requirements of this provision by adopting a resolution. The resolution should then be advertised in the manner required for parish ordinances, as well as in accordance with the Waterworks District's customary procedures. *Page 8 
In summary, it is our opinion that the Waterworks District may follow the procedures set forth in R.S. 33:4712 for the sale of immovable property, and that it may adopt a resolution instead of an ordinance for the sale of the land. The Waterworks District should, to the extent possible, follow all notice and publication requirements imposed on police juries.
We trust that this answers your inquiry. Please advise if we can be of further assistance in this matter.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 ____________________________ GLENN R. DUCOTE Assistant Attorney General
RPI:GRD:jav 06561 *Page 9 
 ATTACHMENT OPINION NUMBER 95-262 90-A-1 PUBLIC FUNDS CONTRACTS R.S. 39:330.1, 39:321, 49:125, 330(B)(1) La. Const. Art. VII, Sec. 27
 DOTD may dispose of surplus property acquired with Transportation Trust Funds (TTF) by auction conducted by Division of Administration or auction conducted by DOTD and approved by Commissioner of Administration. Costs of sale may be paid with TTF money.
 Mr. Raymond J. Laborde Commissioner of Administration State of Louisiana P.O. Box 94095 Baton Rouge, LA 70804-9095
Dear Commissioner Laborde:
You have requested the opinion of this office on whether it is legal for the Division of Administration ("Division") to sell surplus property of the Department of Transportation and Development ("DOTD"). You have further asked whether it is constitutional for the Division to retain its customary fee for the disposition of property in the event of such a sale when the property was originally purchased using funds from the Transportation Trust Fund (TTF).
Louisiana Revised Statute 39:330.1 Sale of Surplus Property provides:
 A. Notwithstanding any law to the contrary, the commissioner of administration, on behalf of the state, is hereby authorized to sell surplus movable property of any board, commission, agency, or department of the state at public auction.
Louisiana R.S.39:321 defines agency and property as:
 A. "Agency" means any state office, department, board, commission, institution, division, officer or other person, or functional group, heretofore existing or hereafter created, that is authorized to exercise, or that does exercise, any functions of the government of the state . . .
 D. "Property" means any tangible non-consumable movable property owned by an agency.
DOTD clearly falls within this definition of agency and is therefore within the legal authority of the Division to sell the surplus property of DOTD at public auction pursuant to R.S.39:330.1.
Article VII, Section 27 of the 1974 Louisiana Constitution establishes the TTF. This article specified that the funds of the trust fund may be spent only for certain purposes:
 B. The monies in the trust fund shall be appropriated or dedicated solely and exclusively for the costs for and associated with construction and maintenance of the roads and bridges of the state and federal highway systems, and the Statewide Flood-Control Program or its successor, ports, airports, transit, state police for traffic control purposes, and the Parish Transportation Fund or its successor and for the payment of all principal, interest, premium, if any, and other obligations incident to the issuance, security, and payment in respect of bonds or other obligations payable from the trust fund as authorized in Paragraph (D) hereof. *Page 10 
La. R.S. 49:125 Sale of surplus movable property at auction, provides:
 A. Notwithstanding any other provision of law to the contrary, the state or any political subdivision of the state is hereby authorized to sell surplus movable property at public auction, in addition to other methods provided by law for such sales. The unit of government so desiring to sell surplus movable property at public auction is authorized to employ qualified licensed auctioneers to handle said sale.
This provision authorizes DOTD to stage its own auction. However, DOTD must first gain permission from the Division as required by R.S. 39:330(B)(1):
 B.(1) No property of any agency shall be sold to any person or legal entity or otherwise alienated or transferred, assigned, or entrusted to any other agency or to any officer or employee of any other agency without the written consent of the commissioner.
"Commissioner" as provided in this statute, is defined in R.S.39:321(B) as the "Commissioner of Administration." Thus it would appear that an agency which holds good title to movable property may dispose of any surplus property by way of a public auction conducted either by the Division, or by the agency itself with written permission from the commissioner of administration. Opinion Attorney General No. 88-138. Should the commissioner not consent to a DOTD auction, DOTD may request that the Division auction its surplus property.
In either case, the costs of the sale may be paid from TTF funds. To hold otherwise would bring about an absurd result in that it may be impossible for DOTD to dispose of such property at all, thus wasting resources. In interpreting the TTF constitutional provision, one is not bound by the literal interpretation, where this would lead to an absurd result, or a plain violation of the spirit and purpose of the enactment. The real purpose and intent of the constitutional provision, as determined from a consideration of all components, must prevail over a literal meaning which would yield a result contravening the primary purpose and intent of the provision. In re Coon,141 So.2d 112 (La.App. 1st Cir. 1962), Cert. Denied. It is the opinion of this office that the cost of sale of surplus TTF purchased property is a legitimate cost for and associated with the TTF program, and therefore may be paid from the TTF. See Also Opinion No. 94-267A.
I trust that this answers your inquiry. Please advise if we may be of further assistance to you in this matter.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 By: ______________________ GLENN R. DUCOTE Assistant Attorney General *Page 11 
 ATTACHMENT OPINION NO. 03-0056 90-A-2 PUBLIC FUNDS-Loan, Pledge or Grants 110 STATE-Surplus Property
 La. Const. Art. VII, Section 14
La. R.S. 33:4711, 33:4712, 33:4712(F) La. R.S. 43:1711 La. R.S. 49:125
 The Terrebonne Association of Retarded Citizens Inc., as a recipient of public funds for the educational and other needs of the mentally retarded, Is bound by the provisions of Louisiana Constitutional Article VII, Section 14, prohibiting the donation of public property. Under the terms and conditions of the present agreement/contract between the Terrebonne Association of Retarded Citizens Inc. and the Terrebonne Parish Consolidated Government, the Terrebonne Association of Retarded Citizens Inc. is required to comply with the statutes pertaining to the disposal of surplus property by public entities.
 Mr. Sydney C. Sundbery Attorney at Law P.O. Box 3017 Houma, LA 70361
Dear Mr. Sundbery:
On behalf of the Terrebonne Association of Retarded Citizens, Inc. (TARC), you have requested an opinion of this office concerning the disposal of certain movable and immovable property that TARC no longer needs in connection with its operations.
You advise that TARC was incorporated in 1962 as a non-profit corporation to provide for the educational and other needs of the mentally retarded in Terrebonne Parish. On July 30, 1992, TARC and the Terrebonne Parish Consolidated Government (TPCG) entered into a written agreement/contract concerning the funding of TARC's operations by TPCG. Under this agreement/contract, TARC agreed to amend its Articles of Incorporation and By-laws to provide that TPCG would be the appointing authority for TARC's Board of Directors, which directors may be removed by TPCG at any time upon a showing of good cause. The agreement/contract also recites that TARC would be considered a component unit of TPCG; and to the extent permitted by law, TPCG agreed to allow TARC access to all TPCG services, contracts and benefits.
This agreement/contract also requires TARC to submit its budget to the Terrebonne Parish Council on an annual basis for approval. TARC also agreed to submit quarterly reports concerning its operations and expenditures to the Terrebonne Parish Council, and agreed to submit to any audit by auditors selected by TPCG. The agreement/contract further requires TARC to comply with the Public Bid Law, the State Ethics Code, the Public Records Law, the Sunshine Law, and "any other similar law applying to public bodies" in consideration of the funds provided by TPCG to TARC.
You advise that for the fiscal year ending June 30, 2002, TARC received contributions approximating one-third of its total annual revenues from TPCG, and federal/state funds totaling approximately forty-five percent of its total annual *Page 12 
revenues. The TPCG funds come primarily from a 5.08 mill parish wide ad valorem tax for the purpose of operating, maintaining and constructing schools for the mentally retarded. The federal and state funding is received on a per diem, per client/unit basis, and on a reimbursement for actual expenditures basis.
You also point out that Opinion No. 93-218 rendered by this office concluded that TARC must comply with the publication requirements of La. R.S. 43:171 because TARC was a "political subdivision" within the meaning of La. R.S. 43:171; and that TARC was also contractually obligated under its agreement/contract with TPCG to follow the publication provisions of La. R.S.43:171.
You ask whether or not TARC must comply with the statutes pertaining to the disposal of surplus property by governmental entities; and, if so, what statutory procedures can TARC rely upon in disposing of such property. Finally, you ask whether TARC is bound by the provisions of Louisiana Constitution Article VII, § 14, and similar laws prohibiting the donation of public property.
We are of the opinion that, under the terms and conditions of the present agreement/contract between TARC and TPCG, TARC is required to comply with the statutes pertaining to the disposal of surplus property by public entitles. While TARC may be considered a component unit of TPCG under its agreement/contract with TPCG, it is the opinion of this office that TARC should follow the procedures set forth in La. R.S. 33:4712 pertaining to the sale of property by municipalities. This office has previously determined that police juries authorized by La. R.S.33:4711 to sell surplus property can do so in accordance with the procedures applicable to municipalities set forth in La. R.S.33:4712. Op. Atty. Gen. January 15, 1973. Instead of adopting an ordinance as called for in La. R.S. 33:4712, we are of the opinion that TARC may simply adopt a resolution for the sale of any surplus land and/or improvements. See: Op. Atty. Gen. 92-606.
This office is also of the opinion that any sale of surplus moveable property by TARC can be accomplished by following either the provisions of La. R.S. 49:125 or, if the appraised value of the moveable property is five thousand dollars or less, TARC may follow the provisions of La. R.S. 33:4712(F).
Finally, this office is of the opinion that TARC, as a recipient of public funds for the educational and other needs of the mentally retarded, is bound by the provisions of Louisiana Constitution Article VII, Section 14, prohibiting the donation of public property. *Page 13 
We hope that this opinion adequately answers the questions raised in your request; and if we can be of any further assistance to you in this matter, please do not hesitate to contact our office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________ ROBERT H. CARPENTER, JR. ASSISTANT ATTORNEY GENERAL
 RPI/RHC/tp *Page 14 
 ATTACHMENT OPINION NUMBER 93-218 Mr. Sidney C. Sundbery Duval, Funderburk, Sundbery Lovell 101 Wilson Avenue Post Office Box 3017 Houma, Louisiana 70361
Dear Mr. Sundbery,
You have requested the opinion of this office as to whether the Terrebonne Association for Retarded Citizens, Inc. (TARC), is a "political subdivision" of the state or parish within the meaning of LSA-R.S. 43:171 such that TARC must comply with the provisions of that statute for the publication of the minutes of its proceedings. You also ask whether, if TARC is not a "political subdivision" for this purpose, it must otherwise comply with the provisions of LSA-R.S. 43:171 under its contract with the Terrebonne Parish Consolidated Government (TPCG), which in part requires that TARC comply with "the Public Bid Law set forth in La. R.S. Title 38, the State Ethics Code, the Public Records Law, the Sunshine Law, and any other similar law applying to public bodies."
It is the opinion of this office that the Terrebonne Association for Retarded Citizens, Inc., must publish the minutes of its proceedings pursuant to LSA-R.S. 43:171, which provides that:.
 Levee, drainage, subdrainage, road, subroad, navigation, and sewerage districts, or other political subdivisions of the state and parishes, shall have the proceedings of their board and such financial statements required by and furnished to the legislative auditor published in a newspaper.
Since "political subdivision" is not specifically defined for *Page 15 
the purposes of LSA-R.S. 43:171, it is necessary to look elsewhere to determine whether TARC should be considered a "political subdivision" subject to the publication requirement of this statute.
"Political subdivision" is defined fairly broadly in various places throughout the statutory law for different purposes. Section 44 of Article VI (Local Government) of the Louisiana Constitution of 1974 defines "political subdivision" as "a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions." The key to this definition is the legal authority of a body to perform governmental functions.
Likewise, LSA-R.S. 13:5101 et seq. (Suits Against State, State Agencies, or Political Subdivisions) defines "political subdivision" in terms of legal authority to perform governmental functions, while not being restricted to political units contained within clearly defined boundaries. Section 5102(B) defines "political subdivision" as "any parish, municipality, special district, school board, sheriff, public board, institution, department, commission, district corporation, agency, authority, or an agency or subdivision of any of these, and other public or governmental body of any kind which is not a state agency."
Given the apparent purpose of LSA-R.S. 43:171, to provide the public with ready access to the proceedings of public bodies, it would be helpful to examine certain provisions of a companion law, the Louisiana Open Meetings Law, or "Sunshine Law", (LSA-R.S. 42:4.1 et seq.) to determine what bodies are considered of a "public" nature such that the public should be allowed access to their proceedings.
In Seghers v. Community Advancement, Inc., 357 So.2d 626
(La.App. 1st. Cir. 1978), the court held that Community Advancement, Inc., a private non-profit corporation, was subject to the provisions of the "Sunshine Law" as a "public body" within the intendment of the statute. The court reasoned that:
 The corporation was organized to perform and has performed a governmental function, the administration of the antipoverty program. It has been supported almost exclusively by *Page 16 
tax derived funds. It has been able to and has set policy in the distribution of those funds. . . . The fact that Community Advancement, Inc. was organized under the legal mechanics of the private non-profit corporation law of the state should not result in its immunity from the statute.
TARC was incorporated on March 21, 1962 by private citizens as a non-profit corporation. It was formed to provide for the needs of the mentally retarded in Terrebonne Parish, including their education at TARC facilities. TPCG, and its predecessor, the Terrebonne Parish Police Jury, have contributed substantial funds to TARC, primarily from a 5.08 mill parishwide ad valorem tax. Keeping in mind the purpose behind such laws as the Open Meetings Law, the Public Records Act, it is reasonable to require TARC, as a "political body" under the cited jurisprudence, and thus falling within the generally accepted definition of "political subdivision", to comply with the publication requirements of LSA-R.S. 43:171.
Furthermore, it is our opinion that under the express terms of the contract between TPCG and TARC, the Association for Retarded Citizens is obligated to publish the minutes of its board meetings pursuant to LSA-R.S. 43:171. It is a well settled general principle that legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom.Cooper v. Olinde, 565 So.2d 978 (La.App. 1 Cir. 1990); Quinn-LCorporation v. Elkins, 519 So.2d 1164 (La.App. 1 Cir. 1987). The parties are bound by their agreements so long as such agreements are not contra bonos mores or violative of some prohibitory law. Livingston Roofing Co. v. E.E. Rabalais Son,401 So.2d 1047 (La.App. 3d Cir. 1981).
In this case, the provision of the contract requiring that TARC follow the publication provisions of LSA-R.S. 43:171, even if TARC does not fall within the intendment of the term "political subdivisions" in that statute, is neither contra bonos mores nor violative of a prohibitory law. Therefore, the Terrebonne Association for Retarded Citizens is contractually obligated to have the proceedings of its board and those financial statements required to be furnished to the legislative auditor published in a newspaper selected according to the provisions of LSA-R.S.43:171(A)(2). *Page 17 
I hope that this adequately answers your request. If this office may be of further assistance in the future, please do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: _____________________ GLENN R. DUCOTE Assistant Attorney General
 RPI/GRD/bb 7601 *Page 18 
 ATTACHMENT Opinion Number 03-0403 110 State — Surplus Property La. R.S. 34:201 Et Seq. La. R.S. 39:330.1 La. R.S. 49:125 La. R.S. 33:1321 Et Seq. La. R.S. 26:71 Et Seq.
 Article VI, Section 14 Of The 1974 Louisiana Constitution Lake Charles Harbor Terminal District May Follow The Special Statutory Procedures Outlined In La. 34:203.1 To Dispose Of Surplus Movable Property. Alternative Methods To Dispose Of Surplus Movable Property Are Authorized By La. R.S. 33:330.1 And La. R.S. 49:125 Or Pursuant To An Intergovernmental Cooperative Agreement As Provided By La. R.S. 33:1321 Et Seq.
 Representative Daniel T. Flavin, District 36 3221 Ryan Street P.O. Box 6027 Lake Charles, Louisiana 70601
Dear Representative Flavin:
You have requested an opinion of this office on behalf of the Lake Charles Harbor Terminal District (District) regarding the methods by which the District can dispose of surplus movable property, more specifically surplus alcoholic beverages. You inquire as to whether the District can dispose of the surplus property in accordance with the provisions of its statutory authority notwithstanding other state statutory provisions regulating the sale of alcohol.
The Lake Charles Harbor Terminal District constitutes a political subdivision of the state pursuant to Article VI, Section 43 and 44(2) of the 1974 Louisiana Constitution. As a political subdivision, it possesses those powers conferred by our state constitution and laws. R.S. 34:201 created the Lake Charles Harbor Terminal District as a political subdivision of the state. Pursuant to R.S. 34:202 the governing authority of the Lake Charles Harbor Terminal District consists of a board of commissioners known as the Board of Commissioners of the Lake Charles Harbor and Terminal District (Board) whose appointment is subject to confirmation by the Louisiana Senate. The board falls within the category of a state "commission" as defined by R.S.39:321(A).
LSA R.S. 34:203.1 grants the following power to the Board of Commissioners of the District for the disposal of property the Board deems no longer needed for public purposes:
 A. (1)(a) The board may sell by written public bid to the highest bidder any property, or portion thereof, including immovable property, which in the opinion of the board is not needed for public purposes.
 (2) Notice of the proposed sale, including advertisement for bids and the minimum price and terms of the sale shall be advertised in a daily newspaper which is published within the limit of the Lake Charles Harbor and Terminal District and in any other paper or papers that may be selected by the board. The advertisement shall be published three times within ten days, the last *Page 19 
advertisement to appear at least ten days before the day that bids will be received.
 (3) If, after the advertisement for bids, there are no bids received or the bids received are unreasonably low, as determined by a two-thirds vote of the voting members present, then the board may negotiate the sale of such property at fair market value to be agreed upon by majority vote of the voting members present. In no instance may the property be transferred by donation or sold for less than the highest bid, if unreasonably low bids were received.
By the language of R.S. 34:203.1, it is evident that the Legislature intended to give the Board of Commissioners full control over the disposal of its surplus property. The grant of authority to the Board of Commissioners to dispose of property, including a specific method of disposition, allows for the disposition of surplus movable property by the District without any additional approval or statutory action. The sale procedure closely follows that required of other state agencies and political subdivisions in the disposition of surplus movable property. See LSA-R.S. 39:330B and R.S. 49:125.
Pursuant to this specific statutory authority the Board declared the alcohol beverages surplus property and following the above described procedure solicited bids subject to a minimum reserve price. Three bids were received but none meet or exceeded the minimum bid reserve. Pursuant to R.S. 34:201.1(A)(3) the District desired to award the bid to the highest bidder. However, subsequent to the advertisement and receipt of bids, the Louisiana Alcohol Beverage Control Commission (ABC) advised the District that pursuant to R.S. 26.71A the District may not sell the alcohol to a commercial establishment without first obtaining a license. R.S. 26:71A provides that a permit is required before any person may engage in the business of dealing in alcoholic beverages. The ABC Board also advised the District that returning the alcohol to the original retailer for a cash refund or use of a Cooperative Intergovernmental Agreement with the City of Lake Charles, licensed by the ABC to regularly sell alcohol at Civic Center events, may also constitute a violation of the state laws regulating the sale and resale of alcohol. The ABC Board would however approve the sell of surplus alcohol to a private person for personal consumption.
The action of the Board in exercising its statutory powers to dispose of its surplus property does not constitute an action that would be characterized as engaging in the business of dealing in alcoholic beverages such that the licensing requirements of R.S. 26:71A are applicable prior to the return of the surplus beverages to the original retailer for a cash refund or for any sell whether to an individual or to a validly licensed business establishment. The Board is clearly not in the business of buying and selling alcohol for commercial purposes. As such it is the opinion of our office that the Board may return the surplus beverages to the original retailer for a cash refund or it may exercise its special statutory authority set forth in R.S. 34:201.1 to dispose of and sell surplus alcoholic beverages and per the bid process set forth therein award the bid to the *Page 20 
highest bidder whether the bidder is licensed or not to sell alcohol at the retail level. However, the Board must comply with Article VII, Section 14 of the Louisiana Constitution of 1974 which prohibits the donation of property or other things of value of any political subdivision. The District should make sure that the awarded bid price is commensurate with the value of the property sold.
The Board may also sell the surplus movable property to another public entity through an intergovernmental governmental agreement as provided by R.S. 33:1321 et seq., the "Local Services Law". These statutes provide for the purchase of surplus materials and supplies by one public entity from another without the other public entity going through a public bid process. Pursuant to R.S. 33:1324 such a sale may be conducted without going through the public auction or public bid process. The transfer must be for a price that is commensurate to the value of the surplus property.
As a state agency, the District also has the option to dispose of its surplus movable property by public auction in accordance with R.S. 49:125 and 39:330.1. This reasoning is consistent with Attorney General's Opinion No. 79-1222 which states that surplus movable property of the state, or of any board, commission, agency or department of the state can be sold to private parties through the Division of Administration pursuant to R.S. 39:330.1
or, with written consent of the Commissioner of Administration, a State Agency may act under the provisions of R.S. 49:125 allowing the sale of surplus property at public auction after appropriate advertisement.
It is therefore the opinion of our office that the Lake Charles Harbor Terminal District may dispose of its surplus movable property within the special statutory authority establishing the District and specifically the powers granted the District in R.S.34:203.1. In addition the District may dispose of its surplus movable property through an Intergovernmental Cooperative Agreement with the City of Lake Charles or the Board may chose to conduct a public auction pursuant to R.S. 49:125 and 39:330B.
If you have any questions or comments, please do not hesitate to contact our office. With kindest regards,
 Very truly yours,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY: ______________________
 RICHARD L. McGIMSEY
 Assistant Attorney General